UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                              |   |                                |
|----------------------------------------------|---|--------------------------------|
| MARGARET REYNOLDS,                           ) |                                |
|     Plaintiff,                               ) |                                |
| v.                                           ) |                                |
| TARGET CORPORATION,                          ) |                                |
| a Minnesota Corporation,                     ) | Civil Action No. 13-cv-10648-LTS |
|     Defendant / Third-Party Plaintiff,       ) |                                |
| v.                                           ) |                                |
| DENISE JACKSON and                           ) |                                |
| DANE TECHNOLOGIES, INC.,                     ) |                                |
|     Third-Party Defendants.                  ) |                                |

## ORDER AND MEMORANDUM ON MOTIONS FOR SUMMARY JUDGMENT

November 7, 2014

SOROKIN, J.

Defendant and third-party Plaintiff Target Corporation and third-party Defendant Dane Technologies, Inc. have cross-moved for summary judgment. In addition, Target has moved for summary judgment against Plaintiff Margaret Reynolds. Dane's Motion is DENIED. Target's Motion as to Plaintiff's claims is DENIED and its Motion as to its claims against Dane is ALLOWED.

## I. FACTS

The Court draws its factual summary from the undisputed facts, drawing all reasonable inferences in favor of the non-moving parties. On November 15, 2012, Plaintiff Margaret

1

Reynolds and third-party Defendant Denise Jackson traveled together on a bus from the Lynn Senior Center to the Target store in Saugus, Massachusetts. See Docket No. 71-3 at 3. Jackson proceeded to Guest Services to request the use of a motorized SmartKart ("cart"). Docket No. 71-6 at 12. She testified that she was an experienced operator of these types of carts. Id. at 19-21. Jackson was also legally blind owing to an inability to see at night. Id. at 10-11. She could not legally possess a Massachusetts driver's license. Id. At her deposition, when asked what made her legally blind, she stated, "I can't see anything at night. I have night blindness." Id. at 10. She further testified that she had no difficulty seeing the lawyers sitting at the conference table with her. Id. When asked whether her legal blindness limited her daytime activities, she testified, "I can't drive, if that's what you mean. I'm not allowed to have a license. I'm not allowed to drive." Id. at 11. In response to a question as to whether her vision affected her daytime activities in any other ways, she answered, "No." Id. at 11-12.

Target has, at its Saugus store, motorized carts available for customers. Docket No. 70-8 at 4. Third-party defendant Dane Technologies ("Dane") supplied these carts to Target. Docket No. 70-11 at 3. The carts have a maximum speed of 2.1 miles per hour[1] and a stopping distance of 26 inches at that speed. Docket No. 78-1 at 64. Operators steer the cart with a set of handlebars. Id. Between the handlebars, a control box contains an on/off switch, a horn, a battery indicator, and a "thumb actuated proportional directional control." Id. A label on the box explains the functions of these controls through both words and pictures. Id. Warning labels advise operators to "Read Safe Operating Instructions," which are located immediately in front of the operator seat. Id. Other warnings on the cart advise operators to, inter alia, ask for

---

[1] In comparison, the average walking speed of pedestrians who, like Plaintiff, are over 60 years of age is 4.1 feet per second, or roughly 2.8 miles per hour. Docket No. 78-1 at 64 n.1.

assistance before operating the cart and to use it indoors on level surfaces only. Docket No. 76-6 at 2.

A Target employee directed Jackson to a cart and unplugged it from the wall. Docket No. 71-6 at 12, 23. In accordance with its policies and practices, Target permitted Jackson to take the cart without screening either her ability to operate it or her visual capacity to safely drive it. See Docket No. 70-8 at 5-6.[2] Target did not question Jackson about why she wished to use the cart. Docket No. 71-6 at 18.

The cart did not turn on so Jackson signaled to the employee, who assisted her in procuring a different cart. Docket No. 70 at 4. Target had purchased this second cart from Dane only a few weeks earlier. Id. at 7. There is no evidence that Target then had any reason to believe that it was in any way defective, nor is there any evidence now that it is or was defective. When it gave her the second cart, Target had no actual knowledge of Jackson's visual impairment or of any of her other physical or mental health related disabilities.

Nevertheless, immediately after engaging the cart, Jackson struck Plaintiff from behind, knocking her to the ground and causing her injuries including a fractured pelvis. Docket No. 71-2 at 6. Jackson reports that the cart "malfunctioned … moving slowly and lurching … in a jerking motion." Docket No. 71-6 at 24-25. She testified, "I couldn't get it to start … someone had to tell me that I hit another customer, and she was underneath the cart…. I somehow managed to stop the cart. I became upset and I don't remember what happened after that." Id. at

---

[2] Although Target answered "Yes" to the interrogatory: "State whether there were any restrictions imposed by the defendant as to who was allowed to operate the motorized shopping carts while in the defendant's store on the date of plaintiff's accident," this does not contradict Target's practice of allowing customers to use the carts at will. It is undisputed that Target did not, either as a general practice or in the case of Ms. Jackson, screen customers' vision, physical ability, or knowledge about cart operation before allowing them to use the carts. That Target may impose other restrictions is irrelevant to these Motions.

12. The only other evidence submitted to the court surrounding the accident comes from Plaintiff.[3] She testified "I didn't know what it was, what the heck happened. It went – take me from the back. I don't have eyes in the back of my head. Hit me from the back, and here I am down on the floor. I didn't know what it was. I didn't see." Docket No. 71-3 at 5.

Plaintiff filed suit against Target, alleging one claim of negligence. Target, in turn, filed third-party complaints against Jackson (alleging negligence) and against Dane (seeking indemnification). Target now moves for summary judgment against both Plaintiff and Dane.

## II. DISCSUSSION

### A. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There must be sufficient evidence favoring the nonmoving party for a fact-finder to return a verdict for that party. Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). This "requires not only a 'genuine' issue but also an issue that involves a 'material' fact." Id. A material fact is one which has the potential to affect the outcome of the suit. Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). For a factual dispute to be "genuine," the relevant evidence, viewed in the light most favorable to the non-moving party, must be "sufficiently open-ended to permit a rational fact finder to resolve the issue in favor of either side." Nat'l Amusements, Inc., 43 F.3d at 735 (internal citation omitted).

---

[3] There also exists security-camera footage showing the few moments immediately before the accident, wherein Ms. Jackson, in the upper-right corner of the screen, appears to drive away from the camera, apparently into Plaintiff. The video does not provide a clear view of the accident and reveals little.

The moving party need only identify the deficiencies in the nonmoving party's evidence which demonstrate the absence of a genuine issue of fact and needs not provide additional evidence negating the opponent's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Moreover, the court is obligated to draw all reasonable inferences in the nonmoving party's favor. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). However, the court must ignore conclusory allegations, improbable inferences, and unsupported speculation. Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009).

**B. Plaintiff's Negligence Claim**

Plaintiff must point to admissible evidence which, if credited by a jury, would support a verdict in its favor on the negligence claim. Plaintiff claims Target breached its duty to exercise reasonable care in the operation of its store, including in the provision of motorized carts by, at least, failing to ensure Jackson knew how to operate the cart properly.

From Jackson's description of the evidence, a jury could permissibly and reasonably infer that Jackson did not know how to operate this cart.[4] While the warning stickers might well ordinarily discharge Target's duty of reasonable care regarding the provision of shopping carts to Target's customers, in this case, where there is some indication that Jackson "ha[d] difficulty reading small print," Docket 71-6 at 10-11, and no evidence that Target took additional action, a

---

[4] While Jackson testified she understood the operation of this cart and had previously used carts, the law does not require the jury to accept that testimony in the face of her description of the accident and the undisputed evidence that the cart suffers from no defects. See Anderson, 477 U.S. at 255 (questions of believability are reserved for juries).

5

jury could conclude that Jackson had no such knowledge, that customer's lacking the vision to read fine print, but with sufficient vision to drive motorized carts would reasonably foreseeably enter the store and that Target failed to discharge its duty of reasonable care by allowing her to nonetheless use the cart. A jury could further conclude that this breach caused the accident and Plaintiff's injuries. While these are neither required inferences nor the strongest set of inferences from the given facts, the Court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc, 6 F.3d at 841.

Accordingly, Target's Motion for Summary Judgment on Plaintiff's negligence claim is DENIED.

### C. Target's Third-Party Indemnification Claim

Target and Dane have filed cross-motions for summary judgment. Target claims that its contract with Dane, the manufacturer of the cart, entitles Target to indemnification for its defense costs (and liability, were that to occur) arising from Reynolds's claim in this case. The parties' contract, in relevant part, provides:

> INDEMNIFICATION: Vendor shall defend, indemnify, and hold harmless Purchaser, its parent, affiliates, agents and employees, from and against any and all liability, claims, suits, actions, damages, losses and expenses, including costs and attorneys' fees, relating to or arising out of any claim or demand of any kind or nature which any entity or person (including employees or agents of Vendor), whether in privity to Purchaser or not, may make against Purchaser based upon or arising out of the manufacture, delivery, packaging, purchase, sale or use of the Goods or Services, any patent or latent defect therein or the dangerous condition thereof, or Vendor's performance of or failure to perform in accordance with the Terms, or any act or omission of Vendor, its agents, employees or subcontractors whether based on claim of breach of express or implied warranty, workers' compensation, or any other legal theory of liability….
>
> It is the intent of Vendor and Purchaser that all indemnity obligations be without limit, without regard as to whether or not Purchaser furnishes specifications or inspects the Goods or Services, and without regard as to the negligence of any

6

party or parties, whether such negligence be sole, joint or concurrent, active or passive.

Docket No. 69-7 ¶ 12. The parties agree that, in light of the choice of law provision in this contract, Minnesota law governs its interpretation. Docket No. 69-7 ¶ 17. Under Minnesota law, a contract may not indemnify a party from its own negligence unless "such intention is expressed in clear and unequivocal terms [and there is] an express provision in the contract to indemnify the indemnitee for liability occasioned by its own negligence; such an obligation will not be found by implication." Nat. Hydro Sys. v. M.A. Mortenson Co., 529 N.W.2d 690, 694 (Minn. 1995). Here, the contract states explicitly that the Dane shall "defend, indemnify, and hold harmless" Target "from and against all liability, claims, [and] suits …." The parties' agreement expressly defines the scope of Dane's indemnification obligations: "It is the intent of Vendor [Dane] and Purchaser [Target] that all indemnity obligations be <u>without limit</u> … and <u>without regard as to the negligence of any party</u> or parties." Docket No. 69-7 at 5-6 (emphasis added). Plainly, the parties provided, explicitly, for indemnification of any negligence by Target. See Potvin v. John Hancock Mut. Life Ins. Co., No. C0-00-35, 2010 WL 979138, at *2 (Minn. App. Ct. July 18, 2000) (unpublished opinion) (finding an indemnification clause enforceable when stating "[contractor will] indemnify … against all loss … however caused, regardless of any negligence of [building owner]").

Two further points require discussion. First, Dane argues that the accident pertains to the operation of the store and thus does not relate to the Indemnification clause. However, this is not correct. Target's claim clearly "aris[es] out of the … sale or use" of the carts. Second, Dane asserts that, under Minnesota law, courts decline to enforce contracts wherein a party seeks to relieve itself of liability for violations of a "public duty." This principle has no application to this case. Mere negligence is not the type of public duty falling within the rule that the Minnesota

7

courts have articulated. See Yang v. Voyagaire Houseboats, Inc., 701 N.W.2d 783 (Minn. 2005) (declining to award indemnification after an innkeeper violated a statutory duty); Zerby v. Warren, 210 N.W. 58, 64 (Minn. 1973) (refusing to allow indemnification to merchants in a case arising out of merchant's violation of a statute prohibiting the sale of glue to minors). Dane cites no case in which a Minnesota court applied this rule to a claim alleging a breach of the ordinary common law duty of reasonable care.

Accordingly, Target's Motion for Summary Judgment on its contract claim against Dane is ALLOWED.

## III. CONCLUSION

For the foregoing reasons:

(1) Target's Motion for Summary Judgment against Plaintiff, Docket No. 70, is DENIED;

(2) Target's Motion for Indemnification against Dane, Docket No. 71, is ALLOWED; and

(3) Dane's Motion for Summary Judgment, Docket No. 69, is DENIED.

The parties shall file a Joint Status Report in ten (10) days advising the Court: (a) regarding mediation and (b) whether all parties (without identifying the views of individual parties) consent to the exercise of jurisdiction for all purposes by Magistrate Judge Kelley – the Magistrate Judge assigned to this case – to preside over the trial. See Fed. R. Civ. P. 73.

SO ORDERED.


   /s/ Leo T. Sorokin  
UNITED STATES DISTRICT JUDGE